**STATE of Iowa, Appellee,**

v.

**Michael E. JESPERSEN, Appellant.**

**No. 84–417.**

Supreme Court of Iowa.

Jan. 16, 1985.

David D. Dixon and Garold F. Heslinga of Heslinga & Heslinga, Oskaloosa, for appellant.

Thomas J. Miller, Atty. Gen., Sherie Barnett, Asst. Atty. Gen. and Paul M. Goldsmith, Co. Atty., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, McGIVERIN, and SCHULTZ, JJ.

McGIVERIN, Justice.

Defendant Michael E. Jespersen appeals his conviction for the first-degree murder of Jeffrey Woollums in violation of Iowa Code sections 707.1 and 707.2(1) (1983). We affirm.

On appeal, defendant contends (1) that the trial court erred in overruling his hearsay objection to certain testimony by a State witness; and (2) that the State presented insufficient evidence to support his conviction for first-degree murder.

The evidence showed that in the fall of 1983, defendant began living with Woollums in Derby, Iowa, at the home of Woollums' mother and stepfather, Susan and Ivan Snow. Defendant and Woollums were distant relatives and soon became companions. On November 23, 1983, they left the Snow home around noon in Woollums' pickup truck and spent the day drinking and running personal errands in the Albia-Chariton area. Early in the evening, they went to the home of Woollums' former girlfriend, Stephanie Clark, in Albia. The three of them spent several hours drinking and talking until about 10:00 p.m., when they left in the truck. They continued drinking and made several stops before arriving at the Snow home after midnight. The Snows arrived home at about 2:00 a.m. and joined in the drinking, dancing, and conversation.

At about 4:00 a.m. Clark went upstairs to a bedroom. Defendant testified that he followed her shortly afterward and had sexual intercourse with her. Defendant stated that Woollums then entered the room and pulled defendant away from Clark, angrily saying to him, "Come on, we are going to talk." Woollums then went downstairs. Defendant followed, but Clark testified for the State that before he did so he pulled out a knife, opened it, and said to her that "if he had to kill Jeff to win this fight, he would." He then put the knife, still open, in his right front pants pocket.

Defendant and Woollums met downstairs and went out to the truck. Clark followed them and saw them drive off, Woollums in the driver's seat and defendant beside him.

Clark ran back inside the house and called to the Snows that she thought defendant was going to stab Woollums. She and the Snows got into the Snows' car and started to follow the truck at a distance of a block or two. The truck stopped, and defendant emerged.

Ivan Snow got out of his car, ran over to defendant, and asked, "Where is our boy?" Defendant answered, "I stuck him." Snow knocked defendant to the ground and threatened to kill him. He, Mrs. Snow, and Clark looked into the truck and found Woollums lying across the driver's seat with a stab wound in his chest.

Mr. and Mrs. Snow lifted Woollums out of the truck and laid him in the back seat of their car across the laps of Mrs. Snow and Stephanie Clark. Mr. Snow drove to the Lucas County hospital emergency room in Chariton about fourteen miles away. Mrs. Snow testified that during the drive to Chariton she attempted mouth-to-mouth resuscitation, but that she got no response and could not get a pulse.

Woollums was pronounced dead at the Lucas County hospital. The cause of death was the stab wound to his chest, which was approximately three inches deep and had caused damage to the heart and bleeding into the sac surrounding the heart.

In the meantime, defendant had returned on foot to the Snow house, where he took a rifle he had previously given Ivan Snow. He then went to a nearby house and stole a car that had been parked with the keys in it. Driving toward Chariton, he lost control of the car and ran off the road. He then stole another car and also ran it off the road. He abandoned the car and made his way on foot to a barn, where he was later arrested by officers of the Lucas County sheriff's department.

Defendant testified that the fatal wound to Woollums was inflicted accidentally. He stated that as he and Woollums were driving away from the Snows' house, Woollums began to argue with him and hit him about the head with his right hand. Then, defendant said, Woollums stopped the truck and the two began to exchange blows. De-fendant testified that he grabbed his knife and pointed it at Woollums to scare him into stopping the fight. Then, according to defendant, Woollums lunged at him and accidentally impaled himself on the knife.

The jury found defendant guilty of first-degree murder. This appeal followed.

I. *Defendant's hearsay objection.* As noted above, Stephanie Clark testified for the State that defendant, before riding off with Woollums in the truck, pulled out a knife and told her that "if he had to kill Jeff to win this fight, he would." Ivan Snow was later called by the State as a witness. In the course of his testimony he was asked if Clark had talked with him after their arrival at the Lucas County hospital and if she had repeated to him anything that defendant had said to her earlier. Defendant objected to the question as calling for a hearsay answer. The objection was overruled on the ground that Clark's statements to Snow at the hospital qualified as excited utterances. *See* Iowa R.Evid. 803(2). Snow testified that Clark told him that defendant, just before leaving with Woollums, said to her that "before he fought the boy he would kill the son-of-a-bitch." Defendant contends that the trial court erred in admitting this testimony over his hearsay objection, and that as a consequence a new trial should be granted.

■ We note initially that the trial court's ruling on defendant's hearsay objection resulting in admission of the evidence will be upheld if it is sustainable on any grounds appearing in the record. *State v. McCowen,* 297 N.W.2d 226, 227 (Iowa 1980).

■ Iowa Rule of Evidence 801(d)(1)(B) provides that a statement is not hearsay if the declarant testifies at the trial or hearing, is subject to cross-examination concerning the statement, and the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge of recent fabrication on the declarant's part. We believe that the testimony in question was admissible under this rule.

After testifying that defendant had told her "if he had to kill Jeff to win this fight, he would," Stephanie Clark was cross-examined about that statement and other aspects of her testimony. Defendant's attorney pointed out inconsistencies between her testimony on direct examination and statements she had made to police officers and in a deposition before the trial. In particular, it was suggested that in her statements to the police she had said that, before leaving the house with Woollums, defendant had spoken of stabbing him, not killing him. The implication of this line of questioning was that Clark was lying in her trial testimony when she said defendant used the word "kill" rather than "stab."

Under these circumstances, we believe that the requirements of rule 801(d)(1)(B) were satisfied and that Ivan Snow's testimony, as to what Clark told him that defendant had said to her, was admissible thereunder. Clark testified at the trial. She was subject to cross-examination concerning the statement that Snow attributed to her, although defendant chose not to recall her for that purpose. The statement Snow attributed to her was consistent with her testimony in that, according to Snow, Clark said that defendant was talking about killing Woollums, not merely stabbing him. The statement rebutted the implied charge that Clark's attribution of the word "kill" to defendant was à recent fabrication.

We conclude that the trial court did not err in overruling defendant's hearsay objection to the testimony in question, because the testimony was admissible under rule 801(d)(1)(B). We need not address the issue of whether it was also admissible under rule 803(2) as an excited utterance.

II. *Sufficiency of the evidence.* Defendant next contends that the record contains insufficient evidence to sustain his

conviction for first-degree murder. We disagree.

■ To support a conviction for first-degree murder, the State was required to prove beyond a reasonable doubt that defendant killed Woollums with malice aforethought, willfully, deliberately, premeditatedly, and with specific intent to kill. Iowa Code §§ 707.1, .2(1) (1983). *State v. Blair,* 347 N.W.2d 416, 421 (Iowa 1984).

The jury was not required to believe defendant's testimony that the stabbing of Woollums was accidental. In view of the evidence as to the depth of the wound, the force required to inflict it, the angle at which the knife entered, and the cramped dimensions of the truck's front seat, the jury could have concluded that Woollums could not have thrown himself on the knife blade with sufficient force to cause the wound. Instead, the jury could have concluded that the wound was intentionally inflicted by defendant.

■ The use of a deadly weapon, if accompanied by an opportunity to deliberate, even for only a short time, is evidence from which a trier of fact may find malice, deliberation, premeditation, and specific intent to kill.[1] *See State v. Jeffries,* 313 N.W.2d 508, 509 (Iowa 1981); *State v. Poyner,* 306 N.W.2d 716, 718 (Iowa 1981); *State v. Love,* 302 N.W.2d 115, 119 (Iowa 1981); *State v. Frazer,* 267 N.W.2d 34, 39 (Iowa 1978). The jury could have found that the knife that inflicted the wound was a deadly or dangerous weapon and that defendant not only had the opportunity to deliberate using it to kill Woollums, but in fact did so deliberate the killing. There is ample evidence in the record from which a reasonable trier of fact could find all the elements of first-degree murder proven beyond a reasonable doubt.

1. The jury was instructed to this effect, except that the phrase "dangerous weapon" was substituted for "deadly weapon." "Dangerous weapon" was defined in the instructions according to Iowa Code section 702.7 (1983). We believe that the phrase "dangerous weapon" as defined in section 702.7 is substantially identical to the phrase "deadly weapon" as we have used it in our cases. See *State v. Lawr,* 263 N.W.2d 747, 750–51 (Iowa 1978); *State v. Bizzett,* 212 N.W.2d 466, 470 (Iowa 1973); *State v. Heinz,* 223 Iowa 1241, 1258–59, 275 N.W. 10, 20–21 (1937).

We have considered all the claims made by defendant and find them to be without merit. The case is affirmed.

AFFIRMED.