WOLLMAN, Circuit Judge, dissenting.
I respectfully disagree with the majority’s finding that Bolander has established prejudice as defined in Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).
The majority’s reliance on the trial court’s pretrial determination of prejudice is misplaced. The majority observes that the trial judge, in granting Bolander’s motion for a separate trial, stated that “testimony will be introduced concerning statements and admissions made by the Co-Defendant Edna Stiles which would work prejudicially with a jury against this Defendant.” See majority opinion supra p. 1084 (quoting State v. Bolander, No. 83-1333, App. at 6 (Iowa Sup.Ct. June 20, 1983)). The majority thus concludes that “unfair prejudice had been judicially recognized early in this case.” Id.
In reaching its conclusion, the majority mistakenly equates the trial judge’s use of the word “prejudicially” with the Supreme Court’s use of the word “prejudice” in Strickland. The trial judge, however, was not using “prejudicially” as the adverbial form of “prejudice” as specifically defined in Strickland, but rather in the generic sense of the word, meaning adversely or detrimentally.
Moreover, the majority fails to recognize the problem of relying on a finding of prejudice made “early in this case.” When we decide whether an error by counsel prejudiced a defendant, our task is to examine all the evidence presented at trial and then determine whether the defendant has established a reasonable probability *1085 that, but for counsel’s errors, the outcome of the trial would have been different. Strickland, 466 U.S. at 694-95,104 S.Ct. at 2067-68. In making this judgment, a trial court’s pretrial determination of prejudice has little or no value, because when such a finding is made, the judge has not heard any evidence and is examining the potential effect of the evidence in isolation.
I believe that the majority applies the wrong standard of prejudice. The majority finds that without Edna’s second taped statement the evidence in this case is open to several interpretations, some leading to a conviction of first-degree murder and some to a conviction of second-degree murder. See majority opinion supra p. 1084. Because it believes that the untainted evidence supports a variety of inferences, the majority concludes that Edna’s statement was prejudicial to Bolander. Id. Even in the light of Edna’s second taped statement, however, the evidence presented at Bolan-der’s trial is subject to multiple interpretations. If to establish prejudice defendants must show only that the evidence presented at trial is open to a variety of inferences, then many defendants could easily meet the prejudice requirement. Often times the evidence at trial will support different interpretations, some more probable than others.
The proper question is not whether Bo-lander has shown that the evidence is open to different interpretations; instead, the appropriate question is whether Bolander has shown that there is a reasonable probability that, absent the admission of Edna Stiles’s second taped statement, the jury would have interpreted the evidence differently and convicted him of second-degree murder instead of first-degree murder. Strickland, 466 U.S. at 694-95,104 S.Ct. at 2067-68. After reviewing the entire transcript of the trial, I agree with the state that the district court undervalued the strength of the circumstantial evidence. When all of the evidence is viewed together, I am confident that without Edna’s second statement the jury still would have found premeditation and convicted Bolan-der of first-degree murder.
All of the following facts support a finding of premeditation. First, Bolander came to the Stiles home armed with the four-inch folding buck knife that he used to stab Orval Stiles. This knife was a dangerous weapon, and as such, Bolander’s use of it could be considered by the jury as evidence of premeditation. See State v. Poyner, 306 N.W.2d 716, 718 (Iowa 1981) (holding that the use of a five-inch knife creates an inference of premeditation); Jury Instruction No. 24. Second, Bolander carried the knife in a folded position. Premeditation can be inferred from the fact that prior to the stabbing the knife had to be opened and the blade locked in place by pushing a button. See State v. Jespersen, 360 N.W.2d 804, 807 & n. 1. (Iowa 1985) (holding that the “use of a [dangerous] weapon, if accompanied by an opportunity to deliberate, even for only a short time, is evidence from which a trier of fact may find malice, deliberation, premeditation, and specific intent to kill”). Third, the nature of Orval Stiles’s wounds provides evidence of a premeditated intent to kill. The fact that Bolander inflicted stab wounds sufficiently forceful to penetrate Orval Stiles’s heart and expose his intestines is powerful evidence that Bolander premeditated about killing Orval Stiles and intended to kill him. See id. (holding that the type of wounds inflicted upon the victim can show that the wounds were intentionally inflicted); Poy-ner, 306 N.W.2d at 718 (same). Fourth, the table knife Orval used to wedge shut his bedroom door had been bent, indicating that the door to the bedroom had been forced open. This fact evidences that Bo-lander aggressively executed a premeditated attack. Fifth, Bolander at some point stopped using the plunger handle, which was bloody, and began using his knife to stab Orval. Bolander’s change in his choice of weapons is further evidence that he premeditated about stabbing Orval. Last, that Edna’s hands were bound when the police arrived is evidence of a plan by Bolander, and thus of premeditation. See State v. Freie, 335 N.W.2d 169, 172 (Iowa 1983) (holding that evidence of planning directed toward the killing is evidence of premeditation). Bolander offered no convincing explanation for why he bound Edna’s hands with the towel. In his initial statement to the police, Bolander claimed that he had tied her up with the intent to *1086 rob her and that Orval Stiles then approached him. At trial, however, Bolander asserted that he and Edna were kissing when he heard a noise and that he was confronted by Orval when he went to investigate the noise. This version of his story is contradicted by the fact that Edna’s hands were tied when the police arrived. When questioned on cross-examination about this inconsistency, Bolander answered that he did not remember tying up Edna, but that he may have done so.
When all the factors surveyed above are examined in the aggregate, I am confident that the jury would have found premeditation without Edna’s second taped statement. Bolander has not shown a reasonable probability that, absent the statement, the jury would have found him guilty of second-degree murder rather than first-degree murder.
Accordingly, I dissent.