IN THE SUPREME COURT OF IOWA

 No. 130 / 04-0067

 Filed February 3, 2006

STATE OF IOWA,

 Appellee,

vs.

MICHAEL DANIEL GREENE,

 Appellant.

 On review from the Iowa Court of Appeals.

 Appeal from the Iowa District Court for Dickinson County, David A.
Lester, Judge.

 Defendant appeals from convictions for stalking with a dangerous
weapon, Iowa Code § 708.11(3)(b)(2) (2003), and two counts of second-degree
criminal mischief, Iowa Code § 716.4. DECISION OF COURT OF APPEALS
VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED IN PART AND REVERSED IN PART;
CASE REMANDED.

 Linda Del Gallo, State Appellate Defender, and Stephan J. Japuntich,
Assistant State Appellate Defender, for appellant.

 Thomas J. Miller, Attorney General, Mary E. Tabor, Assistant Attorney
General, Rosalise Olson, County Attorney, and Kristin Rienfeld, Assistant
County Attorney, for appellee.

LARSON, Justice.
 Michael Greene was convicted of stalking with a dangerous weapon, in
violation of Iowa Code section 708.11(3)(b)(2) (2003), and two counts of
second-degree criminal mischief under Iowa Code section 716.4. He
appealed, and we transferred his case to the court of appeals, which
affirmed. On further review, we vacate the decision of the court of
appeals, affirm the judgment of the district court in part and reverse it
in part, and remand.
 I.  Facts and Prior Proceedings.
 The facts, when viewed in the light most favorable to the verdicts,
show that Greene and Kathy Miller lived together for a period of time in
Greene’s home. When the relationship soured and Kathy moved out, Greene
threatened to “do something” if Miller refused to reconcile. Kathy’s house
and car were spray painted with graffiti, and personal effects she had left
at Greene’s house began to appear, damaged, at various places around town.
A support post for Kathy’s hammock was cut off, apparently with a chainsaw.
 Greene sent harassing letters to Kathy and to members of her family and
friends. A rock was thrown through a window at her home, and a dead skunk
was thrown into her home. Greene obtained a restraining order against
Kathy, claiming, falsely, that she had harassed him. Metal signs were
posted around the community bearing derogatory comments about Kathy. A
search of Greene’s home revealed a chainsaw, mail addressed to Kathy,
apparently stolen from her mailbox, and other items.
 Most significant among the evidence presented at the trial were steel
shards that had been impaled in Kathy’s car tires and those of her parents’
tires as well. The shards are made of sheet steel, approximately three-
quarters of an inch wide at their base and three inches long, tapered to a
razor-sharp point. The shards are welded to steel bases to keep them
upright. These shards had been propped up against the tires to flatten
them as the cars were moved. As would be expected, the tires went flat
almost immediately. The components of the shards were consistent with
sheet steel available at Greene’s place of employment. These shards play a
prominent role on this appeal because the jury found that Greene, while
stalking his victim, was “in possession of a dangerous weapon.”
 This evidence, as well as other evidence not specifically set out in
this opinion, easily supports a finding that the defendant was guilty of
the general crime of stalking under Iowa Code section 708.11(2). The key
issue is whether these shards, in view of the way they were used, fit the
definition of a dangerous weapon so as to constitute an aggravating factor
under the stalking statute.
 II.  The Search Warrant Issue.
 Greene argues that the district court erred in denying his motion to
suppress evidence seized from his home and his pickup. Contrary to
Greene’s argument, we find the search warrant was based on probable cause.
In fact, the issuing magistrate detailed links between all items listed in
the application and specific evidence presented. Moreover, evidence seized
from Greene that was not covered by the warrant was admissible because it
was seized from plain view, and its incriminating nature was apparent,
based on the officer’s knowledge of the underlying facts. See Horton v.
California, 496 U.S. 128, 136-37, 110 S. Ct. 2301, 2308, 110 L. Ed. 2d 112,
123 (1990).
 III.  The “Dangerous Weapon” Issue.
 Iowa Code section 708.11(3)(b)(2) provides:

 A person who commits stalking in violation of this section commits a
 class “D” felony if any of the following apply:

 . . . .

 (2)  The person commits stalking while in possession of a
 dangerous weapon, as defined in section 702.7.

A dangerous weapon, in turn, is defined by Iowa Code section 702.7 as

 any instrument or device designed primarily for use in inflicting
 death or injury upon a human being or animal, and which is capable of
 inflicting death upon a human being when used in the manner for which
 it was designed. Additionally, any instrument or device of any sort
 whatsoever which is actually used in such a manner as to indicate that
 the defendant intends to inflict death or serious injury upon the
 other, and which, when so used, is capable of inflicting death upon a
 human being, is a dangerous weapon.

 The State may meet this burden of proof on the dangerous-weapon issue
by showing that steel shards either fit the first half of the definition,
i.e., that they were “designed primarily for use in inflicting death or
injury,” or the second half of the definition, i.e., a “device of any sort
whatsoever which is actually used in such a manner as to indicate that the
defendant intends to inflict death or serious injury . . . and . . . is
capable of inflicting death upon a human being . . . .”
 Under the second part of Iowa Code section 702.7, the test is whether
the device is used in such a way as to show an intent to kill or injure a
person. Under that test, we have held that a car may be a dangerous
weapon. State v. Oldfather, 306 N.W.2d 760, 763-64 (Iowa 1981) (holding
car, if operated “in such a manner as to indicate an intent to inflict
death or serious injury, may be a ‘dangerous weapon’ ”).
 Dangerous weapons, in fact, can encompass almost any instrumentality
under certain circumstances.

 Where the issue is whether an assault or a murder has been committed
 with a deadly weapon, it may be held that a stick, stone, hoe, or any
 one of many other instruments is a deadly weapon, according to the
 manner in which it is used, the determination of the lethal nature of
 the instrumentality being a question of fact for the jury.

79 Am. Jur. 2d Weapons & Firearms § 1, at 5 (2002).
 In this case, the court defined “dangerous weapon” for the jury by
quoting the language of section 702.7 and left it to the jury to determine
if the shards met one of those definitions. The trial court expressed some
reservation about submitting the dangerous-weapon issue to the jury, and we
believe under the circumstances of this case it was error to do so. The
general rule is that:

 Whether an instrument used in an assault is a deadly weapon is a
 question of law, where there is no dispute about the facts. Where the
 alleged weapon is not defined by the statute as deadly, a case may
 exist where, from the ordinary harmless character of such instrument
 in the light of its claimed use, the court can say as a matter of law,
 under the circumstances shown, that it is not a deadly weapon.

 On the other hand, the question whether there was an assault
 with a dangerous or deadly weapon is to be submitted to the jury where
 the instrument used is not one declared by statute to be a deadly
 weapon or where its character, whether dangerous or deadly, or not, is
 doubtful, or where its character depends on the manner in which it is
 used.

6A C.J.S. Assault § 156, at 379 (2004) (footnotes omitted).[1] When we
compare the facts of this case to the wording of section 702.7, it appears
the trial court’s reluctance to instruct on the aggravated offense of
stalking while possessing a dangerous weapon was well-founded. Under the
first test for a dangerous weapon under section 702.7, the evidence could
not reasonably support a finding that the shards were “designed primarily
for use in inflicting death or injury . . . .” They were designed to do
just what they did—ruin a car tire. The State argues that, nevertheless,
an intent to ruin a tire may infer an intent to kill or injure a person
because the car might go out of control when the tires deflated. We
believe this correlation is too speculative; under that reasoning, a lug
wrench used to loosen car wheels could be considered a dangerous weapon
because a wheel might fall off the car and cause it to crash. We conclude
the shards fail the first test of section 702.7 (designed to inflict injury
or death).
 They also fail to satisfy the alternative definition under section
702.7 (a device actually used in a manner as to indicate that the defendant
intends to inflict death or serious injury). If the shards were held in
the defendant’s hand in a personal confrontation with a victim, there would
be little doubt that they were dangerous weapons, as they would have been
used in a manner indicating an intent to kill or injure. That is not the
case here, however. While the record would support a finding of intent to
damage property, it could not, as a matter of law, support a finding that
the shards were designed to, or actually used with an intent to, inflict
death or injury. Attributing such intent to the defendant under these
facts would necessarily be based on conjecture.
 We conclude the court erred in submitting the issue of the
defendant’s possession of a dangerous weapon. The evidence, however, is
sufficient to support a verdict of guilt as to the included offense of
aggravated misdemeanor stalking under Iowa Code section 708.11(3)(c), as
well as the convictions for criminal mischief under Iowa Code section
716.4. We vacate the decision of the court of appeals, affirm the
convictions for criminal mischief, and remand for entry of a judgment of
conviction on misdemeanor stalking and for resentencing on all convictions.

 DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT
AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.
-----------------------
 [1]We have previously held that the phrase “dangerous weapon,” as
defined in section 702.7, is substantially identical to the phrase “deadly
weapon.” State v. Jespersen, 360 N.W.2d 804, 807 n.1 (Iowa 1985).