**STATE of Iowa, Appellee,**

v.

**Arthur Alan POYNER, Appellant.**

**No. 63653.**

Supreme Court of Iowa.

June 17, 1981.

Linda Del Gallo of Parrish & Del Gallo, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and John P. Messina, Asst. Atty. Gen., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, ALLBEE and SCHULTZ, JJ.

LeGRAND, Justice.

This is an appeal from a life sentence imposed following defendant's conviction for the crime of murder in the first degree committed in violation of section 707.2(1), Supplement to The Code 1977. We affirm.

The case arose over a five-dollar bet on a pool game. Defendant was not a participant in the game. He bet on his brother to beat Kirk Marges, the victim of this crime. After losing, Marges denied having a wager with defendant. An argument ensued, and eventually defendant invited Marges outside to settle the dispute. The two left the tavern, followed immediately by defendant's brother, Lyle, Danny Flynn, bartender at the tavern, and several tavern patrons. Defendant and Marges were alone outside only "a few seconds." When the others arrived, defendant had Marges pinned against the wall. Lyle and Flynn separated them. Marges walked several steps, collapsed, and lay still. In response to an inquiry, defendant said he had hit Marges "pretty hard." Almost immediately, defendant left the scene.

Within a very few moments the bystanders discovered Marges had been stabbed. Both the police and an ambulance were then summoned. Marges was taken to the hospital, where he was pronounced dead. He had suffered seven or eight stab wounds to the upper front part of his body.

When defendant left the area, he went immediately to his brother's home, where Barbara Kirby, his girlfriend, helped him change, and also hide, his blood-stained shirt. She observed him wash blood off his hands. He also washed blood off an eight-inch knife which he had in his possession. By way of explanation, defendant told Barbara his brother, Lyle, had stabbed someone. Defendant asked his brother's wife, who had just arrived home, to take him "some place." She drove him to a local motel, where he stayed in the car while she registered for a room under the name of Barbara Kirby. She gave defendant the key, and he went to the room. She then returned home after being admonished by defendant not to tell anyone where he was except Barbara Kirby and Lyle.

Upon arriving home, she was told her husband—defendant's brother Lyle—was at the police station. She immediately went there and, under some prodding, disclosed defendant's whereabouts to the police.

Defendant was then arrested at the motel. A consent search of Lyle's home disclosed defendant's bloody shirt. There also appeared to be blood stains on the bathroom lavatory. The blood on defendant's shirt later proved to be the same type as the victim's.

Defendant alleges these errors as grounds for reversal:

1. There is insufficient evidence to support the verdict.

2. The trial court abused its discretion in permitting the state to question Barbara Kirby about her compliance with the trial court's sequestration order.

3. The defendant was denied a fair trial by the prosecutor's inflammatory final argument.

4. The court erred in giving an instruction on flight.

5. Defendant was denied effective assistance of counsel.

I. *Sufficiency of the Evidence.* We find no merit to defendant's contention that the evidence is insufficient to support the verdict. In viewing this matter, we consider the evidence in the light most favorable to the state and accord it all reasonable inferences. *State v. Rich*, 305 N.W.2d 739 (Iowa 1981); *State v. Taylor*, 287 N.W.2d 576, 577 (Iowa 1980). Much of the state's case depends on circumstantial evidence. However, circumstantial evidence is just as probative as direct. *State v. Rich; State v. O'Connell*, 275 N.W.2d 197, 205 (Iowa 1979).

With these principles in mind, we review the evidence in the present case. Defendant and the victim had engaged in a running argument concerning the five-dollar bet. Although it did not cover a long period of time, it became quite heated. The climax to the argument came when defendant challenged his adversary to go outside to finish the dispute. They were outside alone only a short time. Those who followed them found the two locked in a "bear hug." They were separated, and Marges collapsed. No one saw defendant with a knife; no one saw the victim get stabbed. However, later examination disclosed Marges suffered seven or eight stab wounds to the upper part of his body. His death resulted almost immediately.

Although no one actually saw defendant leave, he was gone from the scene within a very few minutes. He appeared at his brother's home in blood-stained clothing and possessed of a blood-stained knife.

Thus it appears—and the witnesses agree—no one else had an opportunity to stab Marges. All the evidence points to defendant as the culprit. He fought with Marges, he alone had the opportunity to stab the victim, he hurriedly left the scene, he changed his blood-stained clothing, he washed off a blood-stained knife, he asked to be taken to a place of hiding, and he attempted to lay the blame on his brother.

There was substantial evidence to support the jury verdict that defendant stabbed Marges. The evidence supported, too, the finding that the killing was first-degree murder. *State v. Winfun*, 261 N.W.2d 484, 486 (Iowa 1978). A knife with a five-inch blade is a deadly weapon. Its use creates an inference of premeditation and deliberation. Premeditation and deliberation need not exist for any particular period of time. *State v. Smith*, 240 N.W.2d 693, 695 (Iowa 1976); *State v. Gilroy*, 199 N.W.2d 63, 66 (Iowa 1972). The multiple wounds refute any suggestion of inadvertence or mistake and supply strong evidence of malice and intent to kill.

Defendant's insistence he was convicted on insufficient evidence cannot be sustained.

II. *Prejudicial Final Argument.* Closing arguments were not reported. Defendant's lawyer made timely objection to a statement by the county attorney and moved for a mistrial. In ruling on the motion, the trial court observed the county attorney's argument was proper rebuttal to "impassioned" argument by the defense.

We have no record here upon which to review this complaint. *See State v. Horsey,* 180 N.W.2d 459, 460–61 (Iowa 1970); *State v. McPherson,* 171 N.W.2d 870, 874 (Iowa 1969) and citations. All we have before us is defendant's objection and his version of what the county attorney said. The trial court says the state's argument was proper response to defendant's own argument. *See State v. Trudo,* 253 N.W.2d 101, 106–07 (Iowa 1977); *State v. Horsey,* 180 N.W.2d at 461. We have examined the record as best we can under the circumstances. We believe defendant places far too much importance on what was said. Defendant had apparently argued Lyle could have been the killer. In reply the state pointed out that Lyle was sitting in the courtroom and he certainly would not be there if he killed Marges. We agree with the trial court there was nothing improper or prejudicial about this. As the trial court pointed out, Lyle had been a witness and was already known to the jury. When counsel made reference to his presence in the courtroom, he was only commenting on what was readily apparent. Misconduct of counsel is grounds for reversal only if it deprives defendant of a fair trial. *State v. Wright,* 274 N.W.2d 307, 315 (Iowa 1979); *State v. Swallom,* 244 N.W.2d 321, 325 (Iowa 1976); *State v. Hall,* 235 N.W.2d 702, 726 (Iowa 1975).

III. *The Flight Instruction.* Defendant says there was insufficient evidence to justify an instruction that an inference of guilt arises from evidence of flight to avoid prosecution. He says, too, the authorities find flight to be of little probative value and urges to adopt the rationale approved in *United States v. Peltier,* 585 F.2d 314, 322–24 (8th Cir. 1978) and *United States v. Myers,* 550 F.2d 1036, 1049–51 (5th Cir. 1977). In *State v. Barr,* 259 N.W.2d 841, 842 (Iowa 1977), we said an inference of guilt may be drawn from flight for the purpose of avoiding or retarding prosecution. *See also State v. Galvan,* 181 N.W.2d 147, 151 (Iowa 1970); *State v. Thrasher,* 175 N.W.2d 397, 403 (Iowa 1970).

In the present case the record permits a finding that defendant departed the scene of the crime. He immediately disposed of his stained clothing and of a bloodstained knife. He was taken at his request to a motel and he asked that his whereabouts be kept secret except from designated persons. In leaving his brother's house, he took great pains to make certain he wasn't seen. We believe his conduct fits the *Galvan* rule that "departure from the premises alone right after the crime but before the police and ambulance arrived constituted a circumstance indicating flight." 181 N.W.2d at 152.

This rule is not in conflict with either *Myers* or *Peltier* relied on by defendant. Although expressing some misgivings about the probative value of evidence of flight, those cases were both decided—one approving and the other disapproving an instruction on flight—on the particular facts of each case.

We hold the trial court was right in giving an instruction on flight under this record.

IV. *Effective Assistance of Counsel.* After the trial was over and the adverse result known, defendant vigorously argued ineffective assistance of counsel. Ordinarily we do not decide that question on direct appeal, preferring to reserve it for postconviction proceedings when counsel can defend against such a charge. *State v. Steltzer,* 288 N.W.2d 557, 560 (Iowa 1980); *State v. Williams,* 285 N.W.2d 248, 270–71 (Iowa 1979); *State v. O'Connell,* 275 N.W.2d 197, 205–06 (Iowa 1979); *State v. Coil,* 264 N.W.2d 293, 296 (Iowa 1978). However, this case comes to us under unusual circumstances. The questions concerning adequacy of counsel have already been considered and ruled on as part of defendant's motion for new trial. Counsel responded to defendant's charges and explained why certain trial tactics were employed. Defendant was given full opportunity to voice his objections, and he did so.

Thereafter the trial court made this ruling:

Let the record show that the Court, having taken part in the trial of this matter, and having observed all of the witnesses and the conduct of the trial by the State and by the defendant, ... [is] fully convinced that the defendant understood his right [to testify] and all matters relating thereto and the Court feels that the defendant knowingly and intelligently and of his own free will and accord chose not to testify, which was certainly his right and the Court believes that he exercised that right knowingly and willingly.

The Court felt that the defendant's counsel, Mr. Anderson and Mr. Wheeler, conducted a thorough examination of all witnesses and the Court had no question but that the defendant was receiving good, adequate and competent counsel during the trial of this matter.

The Court can understand why the defendant, after the jury verdict returns, is dissatisfied with some of the decisions made by the counsel during the trial, but the Court became aware of no instances where defendant was denied a fair trial, or that he was not represented by competent counsel at all stages of that proceeding.

■ Since this question raises constitutional issues, we must review the evidence and make our own evaluation of the claim on the totality of the circumstances. *Sims v. State*, 295 N.W.2d 420, 422 (Iowa 1980).

■ The matters considered and ruled on in the motion for new trial are the same defendant now raises. There is nothing to support his claim. The record shows diligent and sincere representation throughout the case. A competent defense is not necessarily a successful one. We agree with the trial court that defendant had "good, adequate, and competent counsel."

■ V. *Sequestration Order.* The court ordered witnesses to remain outside the courtroom until they had testified. When Barbara Kirby testified, the county attorney attempted to show she circumvented this order by having several friends sit in at the trial, take notes, and brief her on what the testimony was.

Defendant objected to this procedure at trial and again in his motion for new trial. The trial court overruled his motion for new trial with this comment:

Let the record show that Paragraph 1 of defendant's motion for new trial alluding and referring to the county attorney's questioning of a witness, Barbara Kirby, was raised at the trial ... at the time the incident occurred.... The Court felt at that time that the questions were not prejudicial and that the matter was not of such magnitude as to deny the defendant a fair trial. Therefore, the Court overruled the objections raised at that time. The Court does not feel that there is any reason to change its opinion that it formed at the time of the trial.

We agree with the trial court. Assuming, arguendo, that the questions were improper, we find no prejudice justifying a new trial.

Finding no reversible error in any of the issues raised, we affirm the judgment.

AFFIRMED.