# IN THE COURT OF APPEALS OF IOWA

No. 19-1620
Filed January 21, 2021

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**TRAN LEE WALKER,**
　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Tod J. Deck, Judge.

Tran Walker appeals his convictions on two counts of first degree murder. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., and Mullins and Greer, JJ.

**DOYLE, Presiding Judge.**

Tran Walker stabbed Paiten Sullivan forty-three times and Felipe Negron Jr. seventeen times. Both victims bled out and died as a result of their multiple stab wounds. Walker was charged with two counts of first-degree murder. After a bench trial, Walker was found guilty as charged. On appeal, Walker argues the State failed to present sufficient evidence to prove he could form the specific intent necessary for first-degree murder. He argues that the evidence of his mental-health problems was enough to negate a finding of specific intent. He requests that his convictions, sentence, and judgment be vacated and his case remanded to the district court for entry of conviction, sentence, and judgment for the lesser offenses of second-degree murder, or that his conviction, sentence, and judgment for the first-degree murder of Negron be reduced to second-degree murder. Concluding that sufficient evidence supports a finding that Walker formed the specific intent to kill each victim, we affirm.

**Background Facts.**

In the months before the murders, eighteen-year-old Walker dated seventeen-year-old Sullivan. They were involved in an on-again/off-again relationship. They broke up in January 2018. Walker was hurt. He took the breakup badly and wanted closure. In late January, seventeen-year-old Negron, a friend of Walker's, told Walker Sullivan wanted to meet so they could talk. Negron and Sullivan picked Walker up. Negron drove while Walker and Sullivan sat in the back. The three drove to a local Wal-Mart and parked in the parking lot. Walker and Sullivan discussed their relationship, and at some point, Sullivan told Walker she did not love him anymore. Walker later told detectives "Like, I wasn't

angry. I didn't feel anything about it, I was just like, okay." The three left the parking lot to take Sullivan home, and they continued to engage in a casual conversation.

Once the trio neared a bar called Pete's 20th Tavern, Walker took out his knife and started stabbing both Sullivan and Negron. Walker claimed he could not remember whom he stabbed first. Negron stopped the car and tried to intervene, but Walker stabbed him. Walker stabbed Sullivan at least forty-three times and stabbed Negron seventeen times. At the same time, about 1:00 a.m., two men, Luis Bernal and Taylor Sarff, were standing outside Pete's 20th Tavern. They heard a scream and saw a girl being attacked by a male down the street. Sarff testified he saw Sullivan ducking and Walker chasing her. Both men ran towards Sullivan and Walker. As they approached, they noticed Sullivan collapsing and falling to the ground. Bernal then saw Negron getting out of the car and asking for help. "Can you help me?" asked Negron. "He stabbed me." When Bernal asked Negron who had done this, Negron replied "Tran Walker." In the meantime, Sarff was holding Sullivan on the ground and tried to wrap her wounds with his sweatshirt. Then, both Sarff and Bernal saw a man dressed in black, later identified as Walker, running away from the scene.

At the same time Michael Hayden, a nurse, was driving to Pete's 20th Tavern when Hayden noticed Negron laying in the snow. Hayden pulled over and attended to Negron. Hayden asked Negron if he knew his attacker, and Negron garbled that it was Tran Walker. By the time paramedics arrived, Hayden could not feel any pulse from Negron. The paramedics found Sullivan pulseless and not

breathing. The paramedics took both Sullivan and Negron to the hospital but were unable to revive them. Both died from bleeding out because of their stab wounds.

Walker ran away from the scene. Around 1:40 a.m. Walker called a friend and asked her to pick him up take him to his mother's place. The friend testified that Walker's voice "sounded very anxious, and like, he was very full of adrenaline." Since she did not have a car available, she could not pick Walker that night.

Having no means of transportation, Walker walked through the neighborhood and crossed the back yard of Alyssa Anderson. Anderson had a home surveillance system outside her house that captured Walker dropping a dive knife by her garage. The police eventually found the knife, footprints, and a blood trail in the snow outside her house. Forensic tests revealed Walker's and Sullivan's DNA on the knife. The police also found a second knife inside the car the trio had been riding in. That knife had a mixture of Sullivan's DNA on the blade and Negron's DNA on the handle. DNA samples taken under Negron's fingernail revealed Walker's DNA. Walker's palm prints were also identified on the car and on the knives.

Bleeding and injured, Walker walked up to a local Hy-Vee and asked to use the bathroom. Hy-Vee employees directed him to the store's restroom. At first Walker explained his wounds by saying he "got jumped." The Hy-Vee employees called the police. Once the police arrived they found Walker in the restroom, blood on the floor, blood on the sink, and quite a bit of paper towel with blood. After a pat down, the police found a third knife on Walker. Walker's hand was bloody, and it appeared that he had cut himself and was trying to cater to that injury. The police

placed Walker under arrest and took him to a hospital and then to the police station. Walker was placed in an interrogation room.

Detectives questioned Walker after he waived his *Miranda*[1] rights. Walker at first denied remembering stabbing the victims but eventually admitted to killing Sullivan and Negron. He admitted using the dive knife found at Anderson's house and using the knife found in the car to stab Sullivan and Negron. He admitted wanting Sullivan to die but not Negron. The police obtained a copy of Walker's Facebook messages. Many messages revealed Walker wanted to kill and disfigure Sullivan and anyone who stepped in his way.

The State charged Walker with two counts of first-degree murder for the deaths of Sullivan and Negron, in violation of Iowa Code section 707.2(1)(a) (2018). Walker waived his right to a jury trial and after a bench trial the district court found Walker guilty as charged. He now appeals his convictions.

**Standard of Review.**

Sufficiency of the evidence challenges are reviewed for correction of errors at law. "The district court's findings of guilt are binding on appeal if supported by substantial evidence. Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." To determine whether substantial evidence supports the trial court's verdict, we consider all the evidence and the record in the light most favorable to the trial court's decision. To support the verdict, "[t]he evidence must be such that, when considered as a whole, a reasonable person could find guilt beyond a reasonable doubt." We draw all legitimate inferences in support of the verdict. However, "[e]vidence which merely raises suspicion, speculation, or conjecture is insufficient."

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

*State v. Hearn*, 797 N.W.2d 577, 579-80 (Iowa 2011) (alteration in original) (citations omitted).  Direct and circumstantial evidence are equally probative.  *State v. Huser*, 894 N.W.2d 472, 491 (Iowa 2017).

**Analysis.**

**A. Sufficiency of the Evidence-Specific Intent.**

Walker contends the State failed to present sufficient evidence to prove he could form the specific intent necessary for first degree murder.  Under Iowa Code section 707.2(1)(a), a person commits first-degree murder if that person "willfully, deliberately, and with premeditation kills another person."  Additionally, a conviction for a first-degree murder requires proof of a specific intent to kill.  *State v. Serrato*, 787 N.W.2d 462, 469 (Iowa 2010).  "[S]pecific intent requires an act calculated to produce a result that the law forbids."  *State v. Fountain*, 786 N.W.2d 260, 264 (Iowa 2010).  Our supreme court has recognized that specific intent is present when from the circumstances the accused must have subjectively desired the prohibited result.  *Id.*  Iowa's stock jury instruction on specific intent provides:

> "Specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.
> Because determining the defendant's specific intent requires you to decide what [he] [she] was thinking when an act was done, it is seldom capable of direct proof.  Therefore, you should consider the facts and circumstances surrounding the act to determine the defendant's specific intent.  You may, but are not required to, conclude a person intends the natural results of [his] [her] acts.

Iowa Crim. Jury Instructions 200.2.  Since specific intent is seldom capable of direct proof, it may be shown by circumstantial evidence and the reasonable inferences drawn from that evidence.  *State v. Walker*, 574 N.W.2d 280, 289 (Iowa 1998).  A fact finder may presume "a person intends the natural consequences of

his intentional acts." *State v. Chatterson*, 259 N.W.2d 766, 770 (Iowa 1977). And "[m]ultiple [stab] wounds refute any suggestion of inadvertence or mistake and supply strong evidence of malice and intent to kill." *State v. Poyner*, 306 N.W.2d 716, 718 (Iowa 1981).

The district court found:

> Considering element 4 of both counts, the court finds that the State has proven this element by proof beyond a reasonable doubt. The court finds that the actions of the defendant were willful. The act of stabbing two victims multiple times is intentional and not accidental. The court infers from the use of a dangerous weapon with the ability to deliberate that the defendant acted with premeditation and the specific intent to kill.
>
> Finally, the court finds that the defendant acted deliberately. The knife used and hidden by the defendant belonged to the defendant, having been given to him by Scott Rogers. He brought this and another knife with him that evening. He stabbed two individuals. He caused 43 total injuries to Sullivan and 17 total injuries to Negron. The events spilled from the vehicle into the nearby street. Not only did the defendant have time to premeditate and deliberate; he, in fact, did deliberate and premeditate. Absent insanity, under the facts of this case, the court cannot conceive of way by which this crime could have been committed that was not deliberate and premeditated. To stab one person multiple times and turn to another person and stab them multiple times almost demands deliberation and premeditation. The defendant had motive derived from his relationship with Sullivan; he engaged in planning activity by bringing more than one dangerous weapon, and the time, effort, and violence necessary to inflict the injuries sustained by the victims show deliberation and premeditation as does the continuation of the actions even after injury to the actor. The State has proven Element 4 by proof beyond a reasonable doubt.

After our review of the evidence, we agree. Evidence of the multiple stab wounds inflicted upon each victim suffice to establish the requisite intent to kill—even without considering Walker's use of dangerous weapons, his statements before the murders, and his admissions afterwards.

**B. Diminished Responsibility.**

Walker contends that no rational fact finder could have found beyond a reasonable doubt that he could form the specific intent required for first-degree murder because evidence of his mental-health problems was enough to negate a finding of specific intent to kill. Walker claims he suffered from multiple mental-health issues and was actively experiencing visual and auditory hallucinations.

> The doctrine of diminished responsibility has been recognized in Iowa as a matter of common law. "[D]iminished responsibility may be offered as a defense where an accused, because of a limited capacity to think, is unable to form a necessary criminal intent." The diminished responsibility defense allows a defendant to negate the specific intent element of a crime by demonstrating due to some mental defect she did not have the capacity to form that specific intent.

*Anfinson v. State*, 758 N.W.2d 496, 502 (Iowa 2008) (alteration in original) (footnote and citations omitted). On this issue, the district court found:

> While the defendant did not present any evidence, the defendant did elicit testimony suggesting the defendant had mental impairment or mental health issues that may have been in existence, or active, during the events underlying this action. The State objected to some of that evidence. There was no notice of defenses filed by the defendant. Iowa Rule of Criminal Procedure 2.11(11)(d) does prohibit a defendant from offering evidence on such a defense without a notice of defenses; however, acknowledging the dispute between the parties regarding what it means to "offer evidence" and deferring to the defendant's right to a defense, the court allowed the evidence and considers the related defenses. The court finds that there was evidence of the existence of some level of mental impairment or mental health issues, but that the evidence does not support the defenses.
>
> With regard to a defense of diminished capacity, the court finds that the State has proven, as set forth above, that the defendant had the specific intent to kill these victims. The references in the record to mental health issues being experienced by the defendant are not sufficient for the court to hesitate in its finding of specific intent. Further, the court was provided with no expert evidence to explain the nature, extent, and effect of the defendant's mental health issues.

We agree.

Walker admits that he offered no evidence on the defense of diminished responsibility but contends that information about his mental health elicited during the State's case-in-chief is enough to support his diminished responsibility argument. Walker references testimony from those who knew him, writings from his journal, statements made during his interview with detectives, and the fact he was shaking when found by police officers in the Hy-Vee restroom after the murders, and that he continued to shake at the hospital—all admitted during the State's case-in-chief. But Walker offered no expert opinion relating to diminished responsibility. *See Lamasters v. State*, 821 N.W.2d 856, 869 (Iowa 2012). Walker's post-murder actions also weigh against a diminished responsibility defense—running away from the murder scene, throwing away the murder weapon, calling a friend for a ride, making up a story about being "jumped," falsely claiming to detectives that he could not remember attacking the victims. *See id.* There was sufficient evidence to support the district court's rejection of the diminished responsibility defense.

**Conclusion.**

It is not disputed that Walker stabbed Sullivan and Negron and that they died as a result of their wounds. Sufficient evidence supports the finding that the killings were first-degree murder. The multiple wounds refute any suggestion of inadvertence or mistake and supply strong evidence of malice and intent to kill. *See Poyner*, 306 N.W.2d at 718. We find unavailing Walker's argument that

evidence of his mental-health issues was enough to negate a finding of specific intent to kill.  We therefore affirm the district court's judgment and sentence.

**AFFIRMED.**