# IN THE COURT OF APPEALS OF IOWA

No. 22-1017
Filed September 27, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KEYON CHRISTIAN ROBY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer,

Judge.


        The defendant appeals his conviction for first-degree murder.  **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Ashley Stewart, Assistant

Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Kyle Hanson, Assistant Attorney

General, for appellee.


        Heard by Tabor, P.J., Buller, J., and Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**TABOR, Presiding Judge.**

Keyon Roby appeals his first-degree murder conviction arguing the State failed to prove he acted with malice aforethought, premeditation, and specific intent to kill. He does not contest the felony-murder alternative presented to the jury. Yet because the jury delivered a general verdict, he contends that insufficient proof on one of two theories requires a retrial. According to Roby, Iowa Code section 814.28 (2019), which directs us to affirm on any supported theory, is unconstitutional. But finding ample evidence to support the premeditation theory, we need not address the constitutionality of that statute.[1] So we affirm.

## I. Facts and Prior Proceedings

On a December afternoon, several friends were hanging out at Grant Saul's apartment in Cedar Falls, "talking to each other, spit balling back and forth," drinking, and smoking marijuana. Saul's guests included Preston McCully, Austin Hulme, and Brody Winder. Early that evening, Roby arrived and brought "a little bag of coke" for the group to sample. About half an hour later, Saul wanted more cocaine and asked Roby to get a bigger supply from Waterloo.

After Roby left, Saul and his companions visited another friend's house and then reassembled at Saul's place. Waiting for Roby to return with the promised cocaine, the group hung out in the living room. A knock sounded at the door, and

---

[1] The supreme court took the same path in *State v. West Vangen*, 975 N.W.2d 344, 347 (Iowa 2022). And our cases have followed this rationale of constitutional avoidance. *See e.g.*, *State v. Hivento*, No. 21-1445, 2023 WL 2395729, at *1 (Iowa Ct. App. Mar. 8, 2023); *State v. Pendleton*, No. 21-1208, 2023 WL 152526, at *1 (Jan. 11, 2023).

McCully went to answer it. Without the benefit of a peephole, McCully called, "Who is it?" A voice yelled, "Coke man." So McCully opened the door.

"Three guys" rushed in, heading down the short hallway toward the living room. Roby was in the lead. McCully tried to engage Roby in conversation, but Roby "put a pistol in [his] face." Roby said, "Everybody sit down. This ain't a fucking joke." McCully remembered their friend, Hulme, "standing up looking confused" and disregarding Roby's order to sit down. That disregard prompted Roby to "come up and hit him in the head" with the butt of his gun "very hard" such that he "might have gotten a concussion." Hulme recalled Roby saying something like "give up your shit."

After Roby struck him with the gun, Hulme turned around and looked at Saul on the couch. Roby stood about seven feet from the couch, pointing his gun at Saul. Hulme saw Saul "reaching his left hand into the couch cushion drawing his pistol." Then, "[t]he shots went off immediately" from Roby's gun. McCully also testified "next thing I know I just hear like three or four loud shots." Another friend, Winder, was listening from the bathroom. He heard the knock, followed by shots fired ten to fifteen seconds later.

After the shooting, Winder saw Roby and his two accomplices run out of the apartment without taking anything. Winder locked the door and called 911. By the time paramedics arrived, Saul was dead.

As part of their death investigation, police learned that Roby messaged his friend Marquas Gafeney before the shooting to say that "he had a[n] easy robbery" he wanted to do. Roby asked Gafeney for a gun. Gafeney came through with a loaded black SIG Sauer 9mm handgun he retrieved from a friend's house—while

Roby and James Wright-Buls waited in a car outside. Gafeney handed the gun to Roby. Roby then described the place and people he wanted to rob, again predicting it would be "sweet"—meaning "easy." But they did not discuss how the robbery would be done.

When the trio arrived at Saul's apartment, Roby went in first, followed by Gafeney, then Wright-Buls. Gafeney described how Roby raised his weapon and entered the living room. Gafeney heard Roby order Saul and the others to "[s]it down, get down." Then demanding, "We need it. We need everything." Wright-Buls did not see what happened but heard three or four gunshots before running out of the apartment. After the shooting, Roby, Gafeney, and Wright-Buls jumped into their getaway car and drove off. Gafeney recalled being "[s]urprise[d]. Shocked. Couldn't really think straight . . . ." He asked Roby, "What the hell? What the fuck?" Roby just said: "Feel good." When Wright-Buls asked Roby what happened, Roby said, "I shot him." Roby had Wright-Bul hide the gun for him. Saul's friends identified Roby from a photographic lineup. And a couple of days later, police stopped a vehicle with Roby and Gafeney in it. Roby and Gafeney tried to run away, and police found the 9mm gun discarded nearby.

Meanwhile, the state medical examiner performed Saul's autopsy. He recorded three gunshot wounds. One bullet went through Saul's chest and hit his left lung and aorta causing massive blood loss. The second bullet pierced his left hip. The third bullet hit his left wrist and forearm. The medical examiner noted another bullet wound to Saul's right foot, indicating he was reclined or fell back. Police found three shell casings in the apartment that matched the 9mm gun. They also found a small purple pistol by the left side of the couch where Saul was sitting.

The State charged Roby with murder in the first degree, in violation of Iowa Code sections 707.1, .2(1)(a), .2(1)(b), and .2(2), a class "A" felony, and robbery in the first degree, in violation of Iowa Code sections 711.1 and .2, a class "B" felony. On the class "A" felony, the State pursued two theories: premeditated murder and felony murder for his participation in the robbery. The jury found Roby guilty as charged with a general verdict for murder. He appeals.

## II. Analysis

Roby contends that the State's evidence was insufficient to prove he committed premeditated murder.

We review Roby's claim for the correction of legal error. *See State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). We consider whether, when taken in the light most favorable to the State, the verdicts are supported by substantial evidence. *Id.* Evidence is substantial if it would convince a rational trier of fact that Roby is guilty beyond a reasonable doubt. *Id.* We take all reasonable inferences that may fairly be drawn from the evidence. *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017).

To prove Roby guilty of murder in the first degree, the State had to show:

1. On or about December 4, 2019, the defendant or a person he aided and abetted shot Grant Saul.
2. Grant Saul died as a result of being shot.
3. The defendant or a person he aided and abetted acted with malice aforethought.
4. The defendant:
(A) Acted willfully, deliberately, premeditatedly, and with a specific intent to kill Grant Saul or acted knowing that a person he aided and abetted was acting willfully, deliberately, premeditatedly, and with a specific intent to kill Grant Saul.
or

(B) was participating in the offense of Robbery in the First Degree, as defined in [a prior instruction] or the offense of Robbery in the Second Degree . . . .

The court also instructed the jury on the lesser-included offenses of second-degree murder, voluntary manslaughter, and involuntary manslaughter. On appeal, Roby does not challenge his conviction on alternative (B), the felony-murder theory. Instead, he attacks only the elements of malice aforethought, premeditation, and specific intent under alternative (A).

## A. Malice Aforethought

The court instructed the jury that malice aforethought is "a fixed purpose or design to do some physical harm to another which exists before the act is committed. It does not have to exist for any particular length of time." The court further defined malice as

a state of mind which leads one to intentionally do a wrongful act to the injury of another out of actual hatred, or with an evil or unlawful purpose. It may be established by evidence of actual hatred or by proof of a deliberate or fixed intent to do injury. It may be found from the acts and conduct of the defendant and the means used in doing the wrongful injurious act. Malice requires only such deliberation that would make a person appreciate and understand the nature of the act and its consequences, as distinguished from an act done in the heat of passion.

The court also instructed, "If a person has the opportunity to deliberate and uses a dangerous weapon against another, resulting in death, you may, but are not required to, infer that the weapon was used with malice, premeditation and specific intent to kill."[2]

---

[2] On that point, the court instructed that "a gun, by law, is a dangerous weapon."

Roby points out that the inference is only permissive; it can be rebutted with evidence that the killing was accidental or provoked. *See State v. Reeves*, 670 N.W.2d 199, 207 (Iowa 2003). He insists he had no motive to harm Saul, no animosity existed between them, and the "shooting only occurred because [he] was in fear and reacting to Saul reaching for a weapon."

True, Roby did not know Saul before that night. But the State presented enough evidence to convince a rational trier of fact that Roby acted with malice when he decided to rob Saul and his friends. The jury could reasonably infer that Roby's decision to gather accomplices and secure a gun showed an unlawful purpose. Roby also demonstrated his willingness to do harm by hitting Hulme with his gun. Even if he did not have a fixed purpose to harm Saul until Saul reached for his own weapon, Roby chose to bring a gun to the apartment and pointed it at the occupants. Then, when Saul pulled his gun, Roby fired not just once but three times, all hitting Saul. The jury could infer that his response to Saul's movement included a chance to deliberate—after which Roby decided to shoot first.

And even if Roby reacted in fear and didn't have time to deliberate, the jury could infer that he developed a fixed purpose to harm Saul before he fired the second and third shots. *See State v. Poyner*, 306 N.W.2d 716, 718 (Iowa 1981) ("The multiple wounds refute any suggestion of inadvertence or mistake and supply strong evidence of malice and intent to kill."). A justification defense was unavailable to Roby because he was participating in the forcible felony of robbery. *See* Iowa Code § 704.6(1). But we do not foreclose the possibility that provocation can diminish an individual's chance to deliberate and develop a fixed purpose to

harm. Here though, for the reasons explained, the alleged provocation does not negate the reasonable inference of malice.[3]

On these facts, we defer to the jury's verdict. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). "[R]esovl[ing] conflicts in the evidence, [passing] upon the credibility of witnesses, [determining] the plausibility of explanations, [and weighing] the evidence" are matters for the jurors. *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006). This record includes substantial evidence to support the jury's finding that Roby acted with malice aforethought, including the presumption from his use of a dangerous weapon.

## B. Premeditation and Specific Intent

Turning to the other elements at issue, the court instructed the jury that specific intent is "not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind." That instruction further told the jury, "You may, but are not required to, conclude a person intends the natural results of his acts." Premeditation is "to think or ponder upon a matter before acting." The State can prove premeditation by "evidence of (1) activity by the defendant to plan the killing, (2) motive based on the relationship between the defendant and the victim, or (3) the nature of the killing, including the use of a deadly weapon combined with an opportunity to deliberate." *State v. Buenaventura*, 660 N.W.2d 38, 48 (Iowa 2003). Premeditation can also be shown through the violent nature of the crime and the defendant's actions immediately following. *Id.* at 49 (describing the victim's attempts to defend herself from attack

---

[3] As for other evidence to rebut the presumption, Roby does not argue that he accidentally discharged his gun.

and the defendant's efforts to cover up evidence). Both premeditation and specific intent can be inferred from the use of a dangerous weapon. *Waterbury v. State*, 387 N.W.2d 309, 311–12 (Iowa 1986).

Roby disputes the proof of premeditation, focusing on the lack of any prior relationship with Saul, the sudden nature of the shooting, and his professed desire for an "easy" robbery. He notes that en route to Saul's apartment, he and the accomplices didn't discuss a plan to kill anyone. Although he admits he brought a gun, he asserts "there was no evidence that he planned to use it as anything other than a scare tactic" to "intimidate" the robbery victims. He denies "threaten[ing] to shoot anyone."

The State contends Roby is too quick to dismiss the reasonable inferences that the jury could draw: "[E]vidence that he armed himself with a loaded gun and shot the victim multiple times proved the killing was first-degree murder. The jury was instructed it could infer malice, premeditation, and specific intent to kill from Roby's opportunity to deliberate and use of a dangerous weapon." In assessing malice aforethought, we found substantial evidence that Roby used a dangerous weapon with the opportunity to deliberate. Beyond that finding, we agree that his preparatory steps show premeditation and an intent to use the gun to kill. As the State points out, if Roby only wanted to intimidate others, he didn't need bullets. But he took a loaded gun. And he made threats while pointing that loaded gun at the robbery victims. Roby insists that he thought it would be an "easy" robbery— no shooting required. But the jury could reasonably conclude that he contemplated using deadly force if his robbery victims did not comply. And the jury could

conclude he intended to kill because he shot Saul not just once, but three times at close enough range and with sufficient accuracy that death was a likely result.

On top of that, the jury could consider Roby's reaction after the shooting. While his accomplices expressed shock at the gunfire, Roby was calm and said it "fe[lt] good." From that reaction, the jurors could reasonably infer that Roby was not surprised at the violent outcome—having entered the apartment with the specific intent to kill if the robbery victims did not comply with his demands. Taking this evidence in the light most favorable to the State and indulging all reasonable inferences, we find substantial evidence that Roby acted with both premeditation and specific intent to kill.

Because we find there is substantial evidence to support a verdict on premeditated murder, and Roby does not challenge the felony-murder alternative, we affirm the conviction on both theories. Thus, we need not address Roby's arguments that Iowa Code section 814.28 addressing general verdicts is unconstitutional. *See West Vangen*, 975 N.W.2d at 347.

**AFFIRMED.**