# IN THE COURT OF APPEALS OF IOWA

No. 24-0531
Filed September 4, 2025

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**KEVIN LEE HALLADEY,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Grundy County, Joel A. Dalrymple, Judge.

A defendant appeals his conviction for first-degree murder. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Adam Kenworthy, Assistant Attorney General, for appellee.

Considered without oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**LANGHOLZ, Judge.**

Kevin Halladey appeals his conviction for first-degree murder. He argues that the State failed to prove that he killed the victim—his girlfriend—with malice aforethought or with premeditation and the specific intent to kill her. But viewing the evidence in the light most favorable to the State, substantial evidence supports the jury's verdict. The nature of the killing by multiple blows to the head, Halladey's past conduct toward the victim and her children, and his anger at being stabbed by her teenage son earlier that night all support the jury's finding that Halladey acted with the malice aforethought and with premeditation and the specific intent to kill. We thus affirm Halladey's first-degree murder conviction.

I.

In December 2021, Halladey was living with the victim and her two teenage children from a prior relationship. Halladey had a history of domestic violence against the victim—earlier that year he was convicted of domestic abuse assault against her. He also sent her threatening and abusive messages. For instance, one night in November, he sent her a series of electronic messages saying "[w]hen I think of you it's hard to breath and not in a good way," "[y]ou truly suck the life out of me . . . ," and "I cant even sleep anymore my head spins knowing you are an abrasive part of my life!!!!." Halladey continued, "I want out so bad but the only way out is death or prison cause you bitches own me . . . There is no escape . . . You fucking bitch cunts own me I have no way out fuck all three of you do what you will to me I'm your victim."

Shortly after midnight on December 16, 2021, the victim's thirteen-year-old son heard a commotion between the victim, the victim's daughter, and Halladey.

And then he heard a thud. Halladey had been arguing with the victim much of the night and then moved on to arguing with the victim's daughter, waking her up while she was in bed. The son had also seen Halladey strike the victim in the jaw a few months before. So believing he needed to defend his sister and mom, the son grabbed a kitchen knife and "went into defense mode"—stabbing Halladey four times. The victim intervened, taking the knife and calling the police. Halladey was transported to the Grundy Memorial Hospital where he was treated for his injuries, which were not life threatening.

Halladey's behavior was so erratic that the two female EMTs transporting him asked a deputy sheriff to sit with them in the back of the ambulance. Halladey refused to comply with many of the EMT's requests, and the deputy had to tell him to calm down. Halladey then said he did not like women and that "they're all the same."

At the hospital, Halladey was still "very erratic," and "very loud and boisterous." According to a nurse, it was difficult to get him settled down so they could do their job. And "he was very upset about how he was stabbed and he was telling us how he could have killed the kid that stabbed him but he didn't." The victim eventually arrived at the hospital to take Halladey home. When she came into the room where Halladey was being treated, Halladey stood up, towered over her, and yelled at her that he knew this would happen someday and her son needed help. The victim did not respond.

Halladey was discharged from the hospital about 4:30 a.m. When they arrived home, a neighbor's security camera—which had been installed a year before when Halladey had threatened to kill the neighbor—captured Halladey and

the victim arguing. Much of the audio is unintelligible. But at one point, Halladey yelled, "you raised a twelve-year-old to stab me," and later, "your son stabbed me."

Almost an hour later, another one of the neighbor's security cameras recorded Halladey approach the neighbor's door. Halladey frantically yelled for the neighbor and pounded on his door repeatedly. When the neighbor finally responded, Halladey yelled "she's hurting, hurry up!" He also ranted about being stabbed, said that he could not find his phone, and asked the neighbor to bring his phone. Halladey went back and forth between the neighbor's door and his own house, again yelling about getting stabbed and asking for help because he was scared. The neighbor did not come out but did call the police and told Halladey that they were coming. As the officers arrived on the scene, Halladey could be heard shrieking uncontrollably.

The first EMT on scene testified that she found the victim on the floor of the dining room. Initially, the victim had a weak pulse, but by the time she arrived at the hospital, she was unresponsive. Her face "was purply, red, and distorted." She was life-flighted to the University of Iowa Hospitals and Clinics, where she later died of her injuries. The final autopsy report found that the cause of death was multiple blunt force injuries to the head. The medical examiner concluded the manner of death was homicide.

After the victim was transported to the hospital, Halladey sent her another string of electronic messages with a very different tone than the first. He started, "Honey I love you so much I'm scared you laid down and fell asleep and stopped breathing I was breathing for you and trying to get help please respond I'm trying to get to the hospital to be with you my love." A few minutes later he continued,

"Baby what is happening you said you wanted to lay down and you stop breathing right please my love tell me what is happening I love you please talk to me. They said you told them no visitors I love you please don't blame me for him stabbing me I'm sorry it happened I love you."

Halladey initially denied any responsibility when he was questioned by law enforcement at the scene and over the next few days. He offered varying explanations of what happened when they returned home from his hospital visit. In a recorded interview with a special agent, Halladey said he and the victim were talking and then she started "fading out" and she decided to lie down on the floor and would not wake up. But Halladey later confessed unprompted, telling a Grundy County jailer, "I made a terrible mistake. . . . I killed my girlfriend. . . . It was an accident."

The State charged Halladey with first-degree murder. After a five-day jury trial, the jury found Halladey guilty as charged. Halladey now appeals.

II.

We review Halladey's challenge to the sufficiency of the evidence on his first-degree murder conviction for correction of errors of law. *See State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). We are bound by the jury's verdict "if the verdict is supported by substantial evidence." *Id.* "Evidence is substantial when a rational trier of fact could conceivably find the defendant guilty beyond a reasonable doubt." *State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016) (cleaned up). "We consider the evidence in the record in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017) (cleaned up).

"[D]irect and circumstantial evidence are equally probative for the purposes of proving guilt beyond a reasonable doubt." *State v. Bentley*, 757 N.W.2d 257, 262 (Iowa 2008) (cleaned up). But the evidence must do more than "create[] speculation, suspicion or conjecture." *Id.* (cleaned up). And it matters not whether "we may draw different conclusions" from the evidence—"the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021) (cleaned up).

To convict Halladey of first-degree murder under Iowa Code section 707.2(1)(a) (2021), the jury must have found—as it was instructed—that the State proved four elements beyond a reasonable doubt: (1) "on or about the 16th day of December, 2021," Halladey "struck" the victim; (2) the victim "died as a result of being struck"; (3) Halladey "acted with malice aforethought"; and (4) Halladey "acted willfully, deliberately, and with premeditation, and with the specific intent to kill" the victim. *See State v. Mathis*, 971 N.W.2d 514, 518 (Iowa 2022) (explaining that unobjected jury instructions become "the law of the case for purposes of reviewing the sufficiency of the evidence").

Halladey challenges only the third and fourth elements. He contends that his actions were consistent with a charge of involuntary manslaughter—not first-degree murder—because the State "offered nothing other than assumption and speculation" that he "acted with malice aforethought" or "willfully, deliberately, and with premeditation with the specific intent to kill" the victim. But the jury could rely on circumstantial evidence the same as direct evidence. *See Bentley*, 757 N.W.2d

at 262. And the circumstantial evidence supporting Halladey's conviction goes far beyond mere assumptions and speculation.

*Malice aforethought.* "Malice aforethought is a fixed purpose or design to do physical harm to another that exists before the act is committed." *State v. Myers*, 653 N.W.2d 574, 579 (Iowa 2002). But malice aforethought "does not have to exist for any particular length of time." *Id.* And "[b]ecause this element is a state of mind, circumstantial evidence is generally used to prove malice." *State v. Buenaventura*, 660 N.W.2d 38, 49 (Iowa 2003). That includes "[e]vidence of bad feelings or quarrels between the defendant and the victim." *Id.*; *see also State v. Newell*, 710 N.W.2d 6, 21 (Iowa 2006) (reasoning that evidence of couple's relationship was relevant to malice aforethought because if the victim and defendant "had an acrimonious relationship, it is more probable that [the defendant] acted with malice—a fixed purpose to do harm—at the time of [the victim's] death than if they had a loving relationship").

Substantial evidence supports the jury's finding that Halladey acted with malice aforethought. Halladey had a history of abusing the victim. He was convicted of domestic abuse assault, and a neighbor testified he would see the victim with bruises around her eyes after Halladey moved in. The victim's mother testified that the victim once called her frantic after Halladey strangled her and she had to call 911. Indeed, Halladey's abuse was so extensive that the victim's son felt the need to use a knife against Halladey to defend his mom and sister.

The record also shows Halladey's growing anger at the victim leading up to the murder through his behavior and statements in the ambulance, at the hospital, and upon returning home. Plus, Halladey's messages to the victim show his ill will

toward her and her children. Based on all this evidence, a rational jury could find beyond a reasonable doubt that Halladey acted with malice aforethought.

*Premeditation, deliberation, and specific intent to kill.* "To deliberate is to weigh in one's mind or to consider, to contemplate, or to reflect." *State v. Freie*, 335 N.W.2d 169, 172 (Iowa 1983). Similarly, "[t]o premeditate is to think or ponder a matter before acting." *Id.* "Deliberation and premeditation may be shown by circumstantial evidence through one or more of the following categories of evidence: (1) evidence of planning activity of the defendant which was directed toward the killing; (2) evidence of motive which might be inferred from entire relationships between defendant and victim; and (3) evidence regarding the nature of killing." *Id.* (cleaned up). Like malice aforethought, "[p]remeditation and deliberation need not exist for any particular length of time." *State v. Wilkens*, 346 N.W.2d 16, 20 (Iowa 1984).

Again, we find substantial evidence supports the jury's finding that Halladey acted with premeditation, deliberation, and the specific intent to kill. First, the nature of the killing supports the jury's finding that Halladey intentionally killed the victim with deliberation and premeditation. The autopsy report and the medical examiner both confirm the victim died as a result of multiple blows to the head. "A beating of that nature requires inflicting injury over and over such that a jury could infer deliberation and thoughtfulness with each blow." *State v. Linderman*, 958 N.W.2d 211, 222 (Iowa Ct. App. 2021); *cf. State v. Poyner*, 306 N.W.2d 716, 718 (Iowa 1981) (holding that multiple stab wounds "supply strong evidence of malice and intent to kill").

Second, the jury could have found that Halladey's past conduct toward the victim and her children and his anger at being stabbed by her teenage son earlier that night support an inference of motive to prove premeditation and deliberation. *See Freie*, 335 N.W.2d at 172. Halladey was previously convicted of domestic abuse assault against the victim. *See State v. Taylor*, 689 N.W.2d 116, 128 (Iowa 2004) ("The defendant's prior acts of violence toward his wife, while certainly illustrative of a propensity to use violence, also reflect his emotional relationship with his wife, which as our discussion shows, is a circumstance relevant to his motive and intent on the day in question."). So too do Halladey's messages show a preexisting willingness to harm the victim and her children—he once told her "death or prison" were the only ways to "escape" them. And just hours before killing the victim, Halladey was stabbed by her teenage son. The jury could have inferred from his increasingly angry behavior and his statement blaming the victim for that stabbing that in the intervening hours he made the premeditated decision to kill her.

At bottom, overwhelming circumstantial evidence supports the jury's finding that Halladey acted with malice aforethought and specific intent, premeditation, and deliberation. And so, we affirm Halladey's first-degree murder conviction.

**AFFIRMED.**